Page number 22-3164 United States of America v. Ricky Jackson Arguments not to exceed 15 minutes per side Ms. Lape, you may proceed for the appellant Good morning Stephanie Lape on behalf of the appellant Ricky Jackson And I would like to reserve three minutes for rebuttal Fine Mr. Jackson is requesting reversal on two issues First, the drug calculation And second, the two-level drug premises enhancement I'm going to start with the drug calculation This issue really boils down to whether or not he should be responsible for Two kilograms of fentanyl related to a July 2018 transaction with a confidential informant Mr. Jackson argues that none of that particular transaction should be counted towards his total drug weight Is it just the one or is this sort of some aggregation of the two Occasions on which the CI supposedly moves kilos of drugs from the home to Gray's place There are two transactions where Mr. Jackson is alleged to have been involved with this CS However, one of those transactions was not counted towards Okay, so it's just the district court is looking at one transaction and that's what we're looking at Yes Okay, thank you, go ahead I do think that other transaction is relevant though and I will come back to that  Under US v. Sandridge, drug calculations have to be supported by a preponderance of the evidence And that evidence must have a minimal level of reliability And what we're really talking about here is that there is the reliability of the evidence In this case, the minimum standard of reliability is not met This drug calculation, this particular transaction that we're talking about Is entirely based on uncooperated double hearsay statements from a confidential informant The same confidential informant who is a known opioid addict was using during the transaction And later found to be unreliable by the same officers that were involved in this case And terminated from being used as a source Was the ECI terminated during the course of the deals with your client or was it subsequent? It was subsequent but during the investigation of this overall drug trafficking organization Which I'm going to call a DTO by the way If you must I won't then Alright, you do what you want I suppose there shouldn't be any great surprise to us that he has been found later unreliable When we know that his job was, isn't this the guy whose job was a tester? Correct So everybody knew from the get go that he's a user because he's a tester, right? Correct And that's the only source of information with regards to the 2 kilos of fentanyl?  And in the record that is the only thing that connects Mr. Ricky Jackson to that transaction To that amount of drugs that are included in his drug weight calculation So how did the district judge find this then to be adequate information? Based on the Just based on that Based on the statements of the confidential informant Which by the way were given by Agent Tate Agent Tate testified at sentencing And Agent Tate was not the officer who was present when the confidential informant made these statements Agent Tate's relying on statements from another officer who did the actual interview of the confidential informant Spoke directly to the confidential informant and the reports of the other officers So it's a double hearsay issue Making the statements of the confidential informant even more reliable The district court didn't have the opportunity to assess the reliability of this particular confidential informant Well just on this double hearsay business I mean is there any case law that says I mean there was no objection to that effect I gather, right? Correct Is there any case law that says in these circumstances nobody objects One officer is describing something another officer heard first hand Is there any case law that would tell us we need to discount this in some manner? There is U.S. v. Armstrong that says The district court should not rely on the hearsay of a confidential informant unless two things are met First is good cause for non-disclosure And second is that there is sufficient collaboration by other means And that doesn't include So there's nothing specific to this aspect of the case I understand your point And you know this is not an overwhelming case I would say in favor of the district court's findings That said, I think we're reviewing them for clear error And would you agree, I mean We need to assess the reliability of the confidential informant generally It isn't necessary to find corroboration for the particular point On which the district court is relying upon as testimony If a number of things check out The court can find the guy credible Even if we don't have specific corroboration for the thing The two kilos for example, that's at issue Is that an accurate statement of the law? It is accurate There was a case that the government cited in their brief That says exactly that That the district court can look at the overall reliability of this particular Of the confidential informant Not necessarily the one particular issue that we're talking about Did the district judge here specify what made him think that the CI was reliable? I don't believe so Well, you know, I mean like I said I've seen more compelling cases probably I can't remember, but you know I mean, I'm not bowled over But at the same time We have a deferential standard And so I have a little list of my own thoughts about Things that I've checked out about the CI's statements And I just want to run them by you and see what you think I mean, so he says that on two So number one, would you agree it seems pretty clear that this is a drug premises? Not saying it's Ricky Jackson's But there's a lot of drugs being moved And commotion around this mirror location, right? So that's the second issue, and yes So the Huntsmere location I don't think we can dispute that it is a drug premises The issue really is Did Ricky Jackson maintain it and control it? Yeah, and I don't mean to merge the two issues So there's this drug premises And the informant says he moves Over two occasions, five kilos Which is a lot of drugs A large distribution quantity of drugs From that residence For Ricky Jackson Whom I guess he calls Juice throughout this, right? He moves this stuff from there to Gray Who's the leader of the conspiracy, right? And isn't it true that that check I mean, the movement of those drugs Isn't that corroborated by Tate specifically or something? The movement of the drugs specific to Ricky Jackson are not corroborated They never Okay, it's the fact that Gray is the leader of the organization though That is corroborated Yes And that's what the CI says Yes And he says he's moving it to Gray Correct Okay And if you want to ask, I don't mean to Yeah, no, I'm just curious what the district judge relied on In finding the two kilos And whether the district judge expressed any basis For saying that the CI was reliable vis-a-vis this defendant Who appears to be a peripheral defendant in this case In terms of the numbers of calls that involved him And who appears to be a peripheral defendant In terms of the number of counts that are listed against him So if we have to give credit to what the district judge relied on What did he rely on? He relied on the statements of the confidential informant And nothing else? Yes That's the only thing that connects Ricky Jackson to these transactions And we've talked about the two transactions The amount of drugs related to one of the transactions Wasn't even counted towards him Because the agents themselves couldn't get enough details Enough reliable details to credit that towards Mr. Jackson And then the one that is credited towards him Again, the amount and the type of drugs Isn't based on a lab report It's not even based on officers analyzing it Or what type of drugs or how much drugs It's based on the CS' statements That this is fentanyl and that's how much it is And the CS is not qualified Like the weight, the kilo weight in other words? Is it a couple bricks? Do we have any idea? You know, sometimes it's a brick, right? A brick, I believe, a brick is one kilo But that's just based on the confidential informants And the type of drug We're talking about converted drug weight So the type of drug changes through our number over here And so we're relying entirely on the CS To tell us what type of drug we're dealing with So the converted weight is the two kilos, right? Correct So fentanyl is very potent No, I'm sorry, it is two kilos Two actual kilos of fentanyl is what the CI says The converted weight that we're talking about total Is 5,014 kilos So I thought it was like a substance I thought it was heroin that was laced with fentanyl This particular transaction is alleged to be two kilos Pure fentanyl? That is what it says in the record There are two other much smaller transactions That could potentially be attributed to Mr. Jackson Related to phone calls Does the CI say how he knew that he believed That this was two kilos of actual fentanyl? I don't believe that's in the record So this is all totally hypothetical Really If you discount the CI Nobody else saw this Nobody else knew what it was Correct There's nothing there And these drugs are never intercepted by law enforcement So they cannot test them, verify them Determine what they are Confidential informant only knows Ricky Jackson as Juice That name Juice is not connected to Ricky Jackson Anywhere else in the record In any of the phone calls Contrary to that Mr. Jackson is actually referred to by his name, Ricky Throughout all of the phone calls The very few that he's involved in He's only referred to by his name Is Juice used in any of the 50,000 intercepted phone calls? It is not Yeah, I mean it looks like the whole thing stands or falls Based on the credibility of the CI Now the CI said the drugs were pretty strong stuff I mean I guess he was testing it, right? Right, he's a tester So he used the drugs and said they were strong And I mean isn't there some corroboration of that remark And thus of his credibility generally Given that this I mean you tell me if I'm wrong That it seems like common ground that this organization's drugs Were laced with fentanyl Which would account for the strength Correct But there's a difference in calculating pure fentanyl in some mixture As far as when you get your total converted drug weight Which will affect your sentencing guidelines Sure I mean just when the CI says the drugs are strong And then we find out separately that the drugs have fentanyl in them Then that's some corroboration Right, it could be fentanyl It could be a strong heroin It could be heroin laced with fentanyl It could be some mixture of And he says that there's this phone that they're passing around Yes Customer phone, I don't know what that is But that seemed to check out Correct But again, Mr. Jackson I'm sorry, go ahead Mr. Jackson is on those calls very seldom Five times out of 50,000 calls Right, and he is never referred to as Juice Although all of the other players involved are referred to as their street names I'm out of time now Your time is up, yes Okay Thank you It's hard to tell with the different I think it's red when it's Yeah, all right, I just figured that out Good morning, your honors May it please the court Sega Phillips on behalf of the United States Your honors, the district court here did not clearly err in finding that the appellant Transferred the two kilograms of fentanyl In July 2018 to a confidential source at Mr. Gray's request Or that the appellant maintained the Huntmere residence For the purpose of distributing drugs Before I get into my argument I do want to correct one thing that came up It does not matter whether it was pure fentanyl Or fentanyl mixed with anything else Drug weight, converted drug weight Is based on a mixture of a substance containing So even if it was almost all heroin But containing fentanyl It would be a mixture containing fentanyl And therefore 5,000 pounds But in this case, your honor As your honor pointed out Yes, on the drug weight It comes down to the credibility of the C.I. Undoubtedly And Because was there anything else To rely on for this two kilos of fentanyl So only the C.S. reported the two kilograms of fentanyl After, when he was debriefed initially That was the report And then they got that information As well as other information And the corroboration About this two kilos What other information is there? Just to be clear I agree I just wanted to be totally clear Yes The two kilos The only There's no evidence of a phone call Involving the two kilos Or anything else like that What is there Is the statement from the C.I. Which he made to task force officer Almonte Which was in investigative reports That's how it ended up We're talking about double hearsay That's not quite correct in this case Once task force officer Tate testifies about it It's true that that's double hearsay But initially it gets into the pre-sentence report Because the probation officer is looking at investigative material And puts it And adds it from the investigative material As it states in the PSR Is that the probation officer relied on That investigative material But then what needs to happen As the Excuse me for asking a question A basic question Does the defendant get to see The report that Almonte made? Certainly they can ask for it Because he pled guilty I don't know the stage of the discovery In that case But they would have been provided Evidence if they need to And they never challenged that That was the statement But I don't have any first-hand knowledge Of what the defense attorney had in her possession Thank you And so what is to look at Is the credibility of this CS The whole thing stands or falls based on that Would you agree? I would agree Just to clarify the question before us Yes Why do you think the guy was credible? I will say just up front It can't just be because an agent vouches for him No So I hear the concrete reasons Concrete things that check out That make this guy credible enough That we would defer to the district court On this determination I will point you first to page ID 5060 And that's where the officer Tate says That everything that the CS presented to them Was borne out Or at least nothing could be proven untrue But you've got to go through the everything That's kind of where I'm saying I fall off the wagon If it's just, you know The agent says everything he said checked out That's not good enough I would say So what's the everything that you have in your arsenal here? Sure So first they identified the Huntmere residence As central to this The CS identified the types of drugs That were being sold from there Crack cocaine, heroin, and fentanyl The CS is the one who turned them on to this These 50,000 phone calls Largely exist because of the information That came from the CS The CS is the one that told them about this customer phone And being passed around That checks out The CS said that they had bought crack cocaine From the defendant at the residence And crack cocaine was in fact found At the Huntmere residence In a search or something? Yeah, it was 44 grams of crack cocaine Plus various baggies Unknown weight or some weight Containing fentanyl mixes And heroin mixes And fentanyl analog mixes And while I'm at it And I think about it I will say also that The judge could have used the CS's determination That the drugs were strong To say that this was a fentanyl analog And that would have skyrocketed the calculation even more Between the heroin Stronger than that is fentanyl And much stronger than that are fentanyl analogs And that's also how they come out in the calculations The judge took the CS's statement That this was strong to be fentanyl And that's consistent with all of the other drugs That were found in this case All the drugs that was exhibit one of the When you say all Aren't you exaggerating Because you just said that The CS bought crack from Oh, I'm sorry What I mean So first of all I think you're wrong In saying all was fentanyl But secondly Doesn't this show that the one transaction That seemingly was observed Involved a different drug And I apologize When I say all What I meant by that is All the mixtures that are fentanyl Crack cocaine and fentanyl look different They present different They're used often differently The argument of why it was taken To be from just merely heroin To fentanyl is what I meant by that I didn't mean to exclude the crack cocaine The tester in this case Was a heroin This is what they tested And they reported that it was Strong but That doesn't really apply to I mean So Is there some kind of evidentiary material That the CI tested This particular 2 kilo package Of whatever it was Yes And the CI says it is what? It was strong Strong It doesn't say it's fentanyl Well Sure but What Officer Tate testified to believe was that The distinction between Something being strong like that Means that it is fentanyl Not that I mean because heroin for a regular user Would not come off as strong per se So that's where that determination was made of And that's consistent with all the other Heroin fentanyl mixes There was never pure heroin found In this case I don't believe It was always a fentanyl mix Or a fentanyl analog Which of course have even higher Guideline calculations Does this business about strong go to His reliability In other words He says it's strong Drugs recovered have fentanyl Or Does it go to I just want to be clear Does it go to the drug quantity here You know that it's Therefore a mixture Even though we never You guys The officers never recovered the brick You know it's a drug quantity Containing fentanyl Or is it both I would say it goes to Whether it's The reliability of whether it's fentanyl Weight by itself It can be any mixture of it So it's just about his credibility That you're talking about this strong business Well and And how it's How it was converted It was converted As two kilograms of Of fentanyl mix Which is why it has Five thousand kilograms Of converted drug weight Because of that So it is both Yes I'm sorry I'm sorry When you said weight I interpreted that As the weight of the brick itself Not the What he's being held accountable for Correct That's right Okay And so you were enumerating The things that Checked out for the CI Anything you want to add Yeah I will I will add that He identified I said already He identified the customer phone It was the same type of drugs And the way Ultimately Officer Tate Referenced them Was that he identified Who was involved Their identities How the DTO operated And so What they described as A wide variety of information That the CS So who was His brother Was also involved And Gray Is that who you mean by that Yeah this was a Much even bigger Conspiracy than that I don't know How wide he The CS knew This but There was Dozens of Defendants in this case And he identified At the least Gray Larry Jackson And Ricky Jackson What operational points Were you just referring to That he identified That checked out So I don't have That record Other than what I've already provided Which is That Ras broadly Did everything he Provide Check out And it was Described as Again The variety of information Including How the DTO operated Who was involved And their identities So if everything Checked out Why did they Terminate him I know it was Because he was Taking drugs But they knew that From the outset If you're relying on him To test it To tell you That it's fentanyl So they didn't necessarily Rely on him To test it He tested He That transaction Happened before He was a source The 2 kilogram transfer Happened before He was a source He then Most likely Was arrested And agreed To provide information And to agree To work One of the Things that happens When somebody agrees To work Is that they Agree to not Use drugs He Was then caught On the customer Telephone Kind of Checks out The phone A little bit That's right It explains why He would be Certainly using And all this To say A different judge Might have said That this is Too far afield But that doesn't Mean that this is Clear error The judge In this case Didn't clearly Error in relying On the information From the CS Based on all of This corroborating Information And the fact that Certainly nothing The CS Said was You know Proven untrue Obviously the one Issue that's Come up is The nickname Juice Whether That is the  Which the Defendant Sorry the source Knew the defendant And no one else Used it Don't have any Evidence of that As my Counterpart pointed Out It Never came up Anywhere else According to the  But Can I ask you A question about How you see The case law What seems to me We've been talking about Is The We'll say The overall Broader credibility Of the CI Where he was Knowledgeable about The whole transaction And what happened At the house Doesn't necessarily Mean that he was Familiar with The transactions With Jackson So what does The case law say As to whether When you're finding A CI credible To provide A sufficient Indicia of reliability On this Drug weight Question Does he also Have to Have A sufficient Degree of Cooperation As to the Specific transaction That he's talking about Or can you Essentially infer That From his Knowledge of the Overall transaction I guess what I'm trying to say Maybe not too Artfully is Is how How thinly Can you Slice and dice What he knows And what he Doesn't know The way I see The case Law shaking Out is that Generally Just the Reliability Of the CS Is what needs To be proven By Sufficient Sufficiently It doesn't have To be Each individual Transaction And there Are ways You know If you can corroborate The information That's provided By other Other means That's great But as long As the CS Is found To be Credible Not each Transaction Has to be Individually Verified Is there a Specific case That you would Rely on For that Yeah I would rely On the two That I pointed Out Were Armstrong And then Oh goodness The other case That also is relied On by Armstrong Where they rely On CS So Armstrong For example They have One gram Buys The CS Then says Well I've done Seventy of these And the defendant Says I've maybe Sold to this guy Five to ten times They don't have Any corroboration For the other Sixty times And the court Still relies On the CS And says Yeah seventy Grams it is And sentences Based on that Based on Just the CS's Information and Reliability And I think That gets to the  Point I will say Alternatively Also in this case So that the Drug weight Is well corroborated By Everything that Has happened In this case I'll quickly touch Since I have less Than a minute On the residents I think Again All this court Has to do Is rely On the CS But there's More than that If you look At paragraph Seventy five Of the Pre-sentence Report The defendant Himself reported That the Huntmere Residence was his Residence And the first PSR Doesn't object To it And the second PSR Again reports it And then only When it Then comes up As we're Implying this Enhancement At the Sentencing Hearing Does that Get challenged And so There's sufficient Evidence based On the Defendant's Own statement As well As what's Reported by the CS As well As his Driver's License As well As all The other Documentation Was there Any Anyone Who saw Him Doing Anything At the House Vis-a-vis Sales So no One And I Think     To test At the MERE Which is What the Members Of Many of  Family members Were residing In that House So yeah His brother Larry Jackson Especially Yes And his Father And younger Brother There was A whole Family Yes Involvement But he lived At another Place that Had MERE In it Correct In Maple Heights He did However as Officer Tate Testified the MERE Is what the Members Of this DTO Called The Hunt MERE Residence It's The address That they Used for This as Corroborated By What ultimately Was found In the search And I'll Quickly touch If I may On the Living Situation It is True that He certainly Spent time At his Girlfriend Or significant Others Place But also He Pretty Clearly Was Reported Himself To be Living At the Hunt  Residence He asked His Probation Office To be Able to Also be At the Hunt  Residence It was The address On his Which was What was His Probation Address Where he Said he Was residing When he Was on Parole So they Actually had The two Addresses They had The Hunt Mirror Address And then They had The address That I Apologize It had Mirror In it And it Was in Maple Heights It was In Maple Heights Yes That's Right And my Understanding Of the Hunt  Residence That's Right His Grandmother Was Living There The Record Reflected He Was On Electronic Monitoring Through April Of 2018 And Yes He Had The One Address Of his Girlfriend And then He had A permission Because he Was on Electronic Monitoring To go To the Hunt  Residence Thank you Thank you Your  If you Could address This  A drug Premises Yes So The Hunt We're Dealing With the Hunt Residence Which Is the Jackson Family Home Essentially There's  Members Of the Jackson Family Living There Including Larry Jackson Who Was A Co- Conspirator And One Of The Major Players In This Drug Trafficking Organization And Then We're Dealing With The Grass Meer And  Was His Main Address Where He Was Living For A Good Portion Of The Hunt Residence So How Would It Be Clear Error Not To Say That He Was Maintaining A  Premises If He Said That The  Residence Was His Main Address Where He Was Living     Of                   His Address And Provided The Evidence To Show That He Was Not Maintaining Or Controlling That We're Not Holding Every Family Member That Was Living There Responsible For This Drug Trafficking Organization The Only Thing That Connects Ricky Jackson To That Residence During The Time Of This Investigation Related To The Offense Is The Confidential Informant Which We've  Talking About There Is A Serious Issue With The Credibility And Reliability Of That Confidential Informant State So There Is No Other Evidence That A  Judge Could Rely On That The Probation Officer Was Saying When All Of A  He  To The Fact That It Was Going To Lead To This Enhancement And He Didn't Object Earlier Or Is That Right Or Is That Wrong He Objected To This Enhancement Which I Don't Think There Is A Specific Written Objection That  I Disagree With This Line Of Statement I Think That Statement Is Somewhat Being Taken Out Of  I Look At It Differently However That Statement Can          Be        Is Part Of The Overall Determination I Think It  Part Of The Evidence That We Have To Look At And What Is There Enough Evidence To Say That Mr. Jackson Controlled And Maintained This Residence As A Drug Premises I Am Still Not Sure That I  Because If It Says That That Is His  And He Doesn't Object And Then He  Objects To The Application Of The Enhancement When You Were Asked By Judge Moore Which I Thought Was A Great Question Is Why Would It Be Clear To Give Him Enhancement If He  In Another Part Of The PSI That He Lived In There Because There Is So There Is That Him Living There Is He Wasn't Actually Living There So There  Actual Evidence In The Record To  That He Was On Electronic Monitoring At Another Address So There Is That And This Is His Family Address Along With Other Members Of   I See That Your Time Is Up So Thank You And I Believe That You Have Been Appointed Pursuant To The Criminal Justice Act And We  You For Your Service To Your Client Thank You The Case Will Be Submitted The Clerk May Call The Next Case